UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL RICHARD SHIPMAN,

      Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Civil Action No. 16-12217

HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## OPINION AND ORDER

Plaintiff Daniel Richard Shipman brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions. For the reasons set forth below, Defendant's motion for summary judgment [Dock. #28] is GRANTED and Plaintiff's motion for summary judgment [Dock. #23] is DENIED.

## I. PROCEDURAL HISTORY

On August 21, 2013, Plaintiff filed an application for DIB, alleging disability as of November 19, 2009[1] (Tr. 206-218). After the initial denial of the claim, Plaintiff requested

---

[1] Plaintiff later amended his alleged onset date to January 14, 2012 due to the *res judicata* effect of a previous finding that he was not disabled on or before January 13, 2012 (Tr. 18, 109-117).

an administrative hearing, held on March 9, 2015, in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") Manh Nguyen (Tr. 35). Plaintiff, represented by attorney Janice Brownson, testified (Tr. 40-69), as did Vocational Expert ("VE") Michelle Ross (Tr. 69-74). On May 7, 2015, ALJ Nguyen found that Plaintiff was not disabled through the date last insured of December 31, 2014 (Tr. 18-30). On April 12, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on June 16, 2016.

## II. BACKGROUND FACTS

Plaintiff, born May 27, 1977, was just short of his 38th birthday when the ALJ issued his decision (Tr. 30-206). He completed a GED and worked as an automotive technician (Tr. 238-239). He alleges disability due to upper and lower extremity numbness; depression; anxiety; chronic back, neck, and leg pain; and migraine headaches (Tr. 237).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He lived in West Branch, Michigan, stood 6' 4", weighed 275 pounds, and lived with his wife and three of his children (Tr. 41). His childcare activities were limited to directing them to do their daily chores, prepare appropriate meals, go to bed at a reasonable time, and "oversee[ing]" their homework (Tr. 41). He was unable to engage in sports with his son due to back pain (Tr. 42).

In response to questioning by his attorney, Plaintiff reported that he had not worked since being injured "on the job" in 2009 (Tr. 44). His lower back condition had worsened since the January, 2012 administrative decision (Tr. 44-45). Due to the back condition, his legs collapsed beneath him periodically requiring him to recline for several hours (Tr. 45). As a result of continual neck pain, he experienced sleep disturbances (Tr. 45). He also experienced sharp left shoulder pain, required the use of wrist splints due to a diagnosis of Carpal Tunnel Syndrome, and experienced lower extremity swelling for which he wore support hose ("CTS") (Tr. 45). He treated his pain with medication, physical therapy, and injections (Tr. 46). He did not experience any improvement from the injections (Tr. 47). He had been told by a neurologist that the back condition was best treated with conservative care (Tr. 48). His upper back problems were triggered by "just normal movements" (Tr. 50). The episodes of upper back pain were currently "few and far between" because he had learned how to move to avoid pain (Tr. 50). He experienced ongoing wrist and finger pain (Tr. 51). His problems gripping were worse in the left (non-dominant) hand (Tr. 51). He was unable to perform manipulative manipulations with the right hand (Tr. 52).

Plaintiff's physician prescribed the use of a cane one year before the hearing (Tr. 52). Plaintiff experienced only limited relief from pain medication (Tr. 54). He experienced the medication side effects of memory problems and nightmares (Tr. 55). He took daytime naps due to nighttime sleep disturbances (Tr. 55). His most comfortable position was lying flat on his back (Tr. 57). He was able to sit for up to 40 minutes at a time and stand and walk for

10 (Tr. 57-58). He was unable to lift more than eight pounds (Tr. 60). He went shopping with his wife once every two weeks but was required to rest on a bench periodically while his wife grocery shopped (Tr. 60). He was able to cook one meal a week (Tr. 65). He experienced up to two "bad" days each week at which time he spent the day in bed (Tr. 66). He was unable to perform any other household, yard, or laundry chores (Tr. 67). Due to pain and mental distraction, he was unable to follow the plot of a movie or television show (Tr. 68).

As a result of his physical limitations and inability to provide for his family, Plaintiff also experienced depression and anxiety (Tr. 63). On one occasional he sought emergency treatment believing that he was having a heart attack before receiving a diagnosis of anxiety (Tr. 63-64). His symptoms were mostly resolved with the use of anti-anxiety medication (Tr. 64-65).

## B.    Medical Evidence[2]

### 1.  Treating Sources

In June, 2010 John N. DiBella, M.D. noted Plaintiff's report of thoracic and low back pain since a November, 2009 workplace injury (Tr. 317 *see* Tr. 326). Dr. DiBella noted later the same month that Plaintiff obtained good results with steroid injections to the thoracic spine (Tr. 314).

---

[2]Records predating the alleged onset date of January 14, 2012 are included for background purposes only.

September, 2011 EMG studies of the bilateral lower extremities ordered by Mohammed M. Al-Qasmi, M.D. showed mild right L4 radiculopathy with a normal left leg (Tr. 374, 380, 383).

On January 13, 2012, Plaintiff reported continued low back pain and migraine headaches (Tr. 433). The same month, Dr. Al-Qasmi observed good motor strength in the lower and upper extremities but diminished reflexes (Tr. 369). He noted a normal gait and station (Tr. 369). Dr. Al-Qasmi recommended continued physical therapy (Tr. 369-370). In May, 2012, Dr. Al-Qasmi made similar findings but noted Plaintiff's report that steroid injections were mostly ineffective (Tr. 367-368). July, 2012 treating records by Clark Jones, D.O. note a normal gait, full orientation and a normal mood (Tr. 410). Plaintiff reported leg numbness from sitting in one position for extended periods (Tr. 410). October, 2012 imaging studies of the cervical spine were unremarkable (Tr. 416, 516). Dr. Al-Qasmi's November, 2012 records note Plaintiff's report of increased left leg pain and right arm numbness with a weakened grip (Tr. 365). Dr. Al-Qasmi observed an antalgic gait and station (Tr. 365). Treating notes by Dr. Jones from the same month note an appropriate mood and affect (Tr. 405).

In January, 2013, Dr. Jones noted Plaintiff's report of dizziness and memory problems but noted a normal affect and full orientation (Tr. 402-403). In May, 2013, Plaintiff sought emergency treatment for dizziness and chest pain (Tr. 355). He was diagnosed with anxiety (Tr. 355). Dr. Al-Qasmi recommended physical therapy for complaints of upper and lower

extremity radiculopathy (Tr. 363-364). The following month, EMG studies of the upper extremities showed left-sided mild, chronic C6-C7 radiculopathy, moderately severe left Carpal Tunnel Syndrome ("CTS"), and mild bilateral ulnar mononeuropathy of the elbows (Tr. 380). July, 2013 records state that Plaintiff was exercising and doing stretching exercises and had reduced symptoms of anxiety (Tr. 511). September, 2013 treating records note an appropriate affect despite Plaintiff's report of anxiety and depression (Tr. 399-400). Plaintiff reported that the symptoms of anxiety were reduced (Tr. 398). December, 2013 treating notes state that Plaintiff did not experience significant relief from prescribed pain medication, used a cane, and experienced right elbow pain (Tr. 499).

In March, 2014, Plaintiff was prescribed compression stockings for lower extremity edema (Tr. 497). An MRI of the lumbar spine from the same month showed only a small disc protrusion at L4-L5 and very mild degenerative changes (Tr. 513, 542). An MRI of the thoracic spine showed only a small disc protrusion at T9-T10 (Tr. 514). An MRI of the cervical spine showed a small herniation at C6-C7 (Tr. 541, 574). May, 2014 treating records note the need for a cane (Tr. 493). The same month, Dr. Al-Qasmi increased Plaintiff's dosage of Neurontin but noted full strength, normal memory, and good coordination (Tr. 549). September, 2014 treating records note ongoing anxiety attacks (Tr. 481-482). Plaintiff reported continued sleep disturbances due to pain (Tr. 485). He also reported recent falls (Tr. 485). Treating records note an abnormal gait but full orientation (Tr. 485).

The same month, neurologist Jayant Jagannathan, M.D. performed a surgical consultation (Tr. 538). He advised against surgery but recommended "pain management," including medication and injections (Tr. 539). In November, 2014, Dr. Al-Qasmi noted a normal gait and full strength but that Plaintiff used a cane (Tr. 546). Treating records from the same month state that Plaintiff was advised to avoid alcoholic beverages (Tr. 570). February, 2015 treating records note Plaintiff's report of back pain, depression, anxiety, irritability, and sleep disturbances (Tr. 551). He exhibited a "wide-based and ataxic gait" (Tr. 552). He exhibited a normal mood and affect (Tr. 552).

## 2. Consultative and Non-Examining Sources

In October, 2013, George Pestrue, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of depression, anxiety, and low energy resulting from his physical limitations (Tr. 424). He reported an anxiety attack two weeks earlier (Tr. 424). He reported that he was easily distracted and was prescribed Ritalin as a child (Tr. 424). Plaintiff reported that he drank a case of beer on weekends and continued to smoke (Tr. 425). He reported that he read for four to six hours a day (Tr. 426). He denied hallucinations (Tr. 427).

Dr. Pestrue observed that Plaintiff was "friendly and cooperative" but moderately depressed with a "flat" affect (Tr. 426-427). He noted good calculations and good judgment (Tr. 428). Dr. Pestrue assigned him a GAF of 47 due to major depression, ADHD, a panic disorder, physical problems, and psycho social stressors (Tr. 429).

The same month, Mark Garner, Ph.D. performed a non-examining evaluation of the medical evidence, finding that as a result of Attention Deficit Disorder ("ADD"), Attention Deficit Hyperactivity Disorder ("ADHD"), depression, and anxiety, Plaintiff experienced mild impairment in activities of daily living and moderate impairment in social functioning and concentration, persistence, or pace (Tr. 135).

The same month, Eric VanderHaagen, D.O. performed a non-examining assessment of the physical limitations on behalf of the SSA, finding that Plaintiff could lift a maximum of 10 pounds; sit for six hours in an eight-hour workday and stand/walk for two; and push/pull with the lower extremities without limitation (Tr. 137). Dr. VanderHaagen found that Plaintiff's ability to push/pull in the left upper extremity was limited (Tr. 137). He found that Plaintiff was limited to frequent overhead lifting and gross manipulation (Tr. 138). He restricted Plaintiff to frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs (Tr. 138). He precluded all climbing of ladders, ropes, and scaffolds (Tr. 138).

## C. Vocational Expert Testimony

VE Ross classified Plaintiff's former work as an auto-mechanic as skilled and exertionally medium (very heavy as performed)[3] (Tr. 70-71, 296). The ALJ then described

_____

[3]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and

a hypothetical individual of Plaintiff's age, education, and work history:

> This person can occasionally lift 10 pounds. This person can frequently lift articles such as docket files, and ledgers, and small tools . . . . can stand and/or walk up to two hours in an eight-hour work day . . . . can occasionally operate foot controls and push/pull with the lower extremities. . . . can frequently push/pull with the upper extremities . . . . [but] cannot climb ladders, ropes, or scaffolds, kneel, or crawl. . . . can occasionally climb stairs and ramps, balance, stoop, and crouch . . . . can occasionally reach overhead with the left arm . . . non-dominant arm. . . . can frequently reach forward, handle, and finger with either hand. For every 30 minutes of sitting, standing, or walking, this person must change position every . . . five minutes, before resuming the prior position. This person will remain on task 90 percent of the work day, despite the changes. Whenever this person stands or walks, [he] must use a cane in the right, dominant hand. This person cannot perform commercial driving. . . . cannot work around unprotected heights or uncovered, unguarded, moving machinery. . . . can carry out simple instructions. . . . cannot work at a production rate pace, such as assembly line work . . . . cannot interact with the general public as part of his or her job duties. . . . can occasionally interact with supervisors and co-workers. . . . [W]ould a person with these restrictions be able to perform the Claimant's past relevant work? (Tr. 71-72).

The VE stated that the above limitations would preclude Plaintiff's past work but would allow for the sedentary/unskilled work of an inserter (125,000 positions in the national economy); machine attendant (110,000); and parts checker (90,000) (Tr. 72-73). She stated that her testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") (Tr. 73). The VE found that if the same individual were additionally limited by being off task 20 percent of the day, missing two or more days of work each month, or, the need for two unscheduled breaks lasting for up to one hour two

---

that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

times a day, all competitive employment would be eliminated (Tr. 73).

### D. The ALJ's Decision

ALJ Nguyen noted that in an earlier application for benefits, Plaintiff was found not disabled on or before January 13, 2012 (Tr. 18). ALJ Nguyen found "new and material evidence" created subsequent to that date supported the finding that Plaintiff experienced additional limitation (Tr. 18)(*citing* Administrative Ruling ("AR") 98-4(6) (Tr. 18); *see also Drummond v. CSS,* 126 F. 3d 837 (6th Cir. 1997).

Citing the medical transcript, ALJ Nguyen found that subsequent to January 13, 2012 and the December 31, 2014 expiration of DIB benefits, Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine, status post work injury, with radiculopathy; degenerative disc disease of thoracic spine; cervical stenosis with neck pain; effusion and cyst of the right knee; insomnia; obesity; major depression; attention deficit hyperactivity disorder ("ADHD"); and panic disorder" but that none of the conditions met or medically equaled an impairment found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 21). He found that the conditions of sinusitis, hyperlipidemia, gastroesophageal reflux disease ("GERD"), and Chronic Obstructive Pulmonary Disorder ("COPD") were non-severe (Tr. 21).

The ALJ found that Plaintiff experienced mild restriction in activities of daily living and moderate restriction in social functioning and concentration, persistence, or pace (Tr. 22). The ALJ found that through December, 31 2014, Plaintiff retained the Residual

Functional Capacity ("RFC") for sedentary work with the following additional limitations:

> Can occasionally lift up to ten pounds; frequently lift articles such as docket files, ledgers and small tools. Can stand or walk up to two hours in eight hour workday; can sit for six hours in an eight hour work day. Can occasionally operate foot controls, and push or pull with the lower extremities. Can frequently push or pull with the upper extremities. No climbing of ladders, ropes or scaffolds. No kneeling or crawling. Can occasionally climb stairs and ramps, and balance, stoop or crouch. Can occasionally reach over head with the left non-dominant arm. Can frequently reach forward, handle and finger with either hand. For every 30 minutes of standing or walking, must change position for five minutes before resuming prior position. Will remain on task for 90% of the workday despite these changes. Must use cane in the right dominant hand when standing or walking. No commercial driving. No work around unprotected heights or unguarded, uncovered, moving machinery. Can carry out simple instructions. Cannot work at a production rate pace, such as assembly line work. Cannot interact with general public as regular job duties; can occasionally interact with supervisors and coworkers (Tr. 23).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to perform any of his past relevant work, he could perform the jobs of inserter, machine attendant, and parts checker (Tr. 29-30).

The ALJ discounted Plaintiff's allegations of disability. He noted that imaging studies of the lumbar spine showed only mild degenerative changes with a "very small disc herniation at L4-L5 (26). The ALJ cited Dr. Al-Qasmi's May, 2014 observation of a normal attention span and recent and remote memory (Tr. 26). He noted that as of November, 2014, Plaintiff exhibited a normal gait despite the use of a cane (Tr. 27). However, the ALJ noted that Plaintiff's allegations had not been "completely dismissed, but rather, . . . included in the [RFC] to the extent that they [were] consistent with the evidence as a whole" (Tr. 28).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. The RFC

Plaintiff argues first that the RFC crafted by the ALJ did not have benefit of an updated physical evaluation. *Plaintiff's Brief,* 15-21, *Docket #23,* Pg ID 674. He contends that the records post-dating the October, 2013 non-examining physical assessment adopted by the ALJ show that the physical conditions worsened between October, 2013 and the May15, 2015 administrative decision. *Id.* He argues that the ALJ erred by failing to order an "updated" assessment. *Id.*

The RFC describes an individual's residual abilities. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002). "RFC is to be an 'assessment of [Plaintiff's] remaining capacity for work' once her limitations have been taken into account" *Id.* (*citing* 20 C.F.R. § 416.945). In determining a person's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability. 20 C.F.R. § 404.1545(a)(1)(RFC must be based on all "relevant evidence"). The RFC must consider the alleged physical, mental, and environmental restrictions. § 404.1545(b-d).

Plaintiff is correct that generally, "updated" medical records are to be accorded more weight than older ones. *See Brooks v. CSS*, 531 Fed.Appx. 636, 642 (6th Cir. August 6, 2013)(ALJ adoption of non-consulting source's earlier opinion over the more recent examining findings constitutes reversible error). Likewise in *Hamblin v. Apfel*, 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001), the Sixth Circuit affirmed an ALJ's rejection of an "outdated" opinion on the basis that another physician had performed a more recent appraisal with contradicting findings).

Specifically, Plaintiff faults the ALJ for adopting Dr. VanderHaagen's October, 2013 finding that he could perform a limited range of sedentary work on the basis that the records between then and the May 15, 2015 administrative decision reflect a greater degree of limitation (Tr. 137). As a threshold matter, the Court notes that Plaintiff's entitlement to DIB benefits expired on December 31, 2014. Therefore, the period under consideration by the ALJ ended less than 15 months after the October, 2013 assessment, not on the date of the

decision (Tr. 30).

Moreover, Plaintiff's argument that the RFC is based on outdated records fails for multiple reasons. First, the adoption of older records over more recent ones does not automatically constitute error. To be sure, "[w]hen an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these new facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, at 642 (*citing Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009))(internal citations and punctuation omitted). The ALJ did exactly that, providing a two-page discussion of the records post-dating the non-examining physical evaluation (Tr. 26-27). He cited the March, 2014 MRI studies showing "small" or "very small" abnormalities (Tr. 26). The ALJ cited the May, 2014 records stating that Plaintiff denied weakness and exhibited normal muscle tone and full strength (Tr. 26-27). The ALJ observed that as of September, 2014, Plaintiff reported the need for a cane but as of November, 2014, exhibited a normal gait (Tr. 27). The ALJ noted that Plaintiff had been advised to continue conservative treatment (Tr. 27).

Second, Plaintiff's contention that the ALJ accepted Dr. VanderHaagen's October, 2013 findings uncritically and failed to credit newer evidence is flatly contradicted by the administrative opinion. The ALJ stated that while he agreed with Dr. VanderHaagen's sedentary RFC, "the record also supports additional limitation, including [the] use of a cane

-15-

for mobilization" (Tr. 28). The RFC composed by the ALJ includes additional manipulative limitations, a sit/stand option, and the use of a cane for standing and walking (Tr. 23, 137-138). Further, while the newer records show that Plaintiff began using a cane approximately one year subsequent to Dr. VanderHaagen's assessment, the newer records do not suggest a greater degree of limitation than set forth in the RFC found in the administrative opinion. While Plaintiff argues, in effect, that the March, 2014 MRI studies validated his allegations of physical limitation, the ALJ correctly noted that the studies reflected at most mild abnormalities (Tr. 26). The majority of the 2014 records show a normal gait and full strength despite the need for a cane (Tr. 485, 493, 549).

Further, given the ample evidence post-dating the October, 2013 assessment, the ALJ was not required to order an additional examination. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917) (" 'If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests' "); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)(ALJ authorized but not required to order additional testing "*if* the existing medical sources do not contain sufficient evidence to make a determination")(emphasis added). Because ample treating records and imaging studies postdate the October, 2013 assessment, Plaintiff's argument that an additional examination

was required for a proper adjudication of the claim is without merit.

Accordingly, Plaintiff's claim that the ALJ relied on "outdated" records in crafting the RFC does not provide a basis for remand.

## B. The Report by Plaintiff's Friend

In his second argument, Plaintiff disputes the ALJ's conclusion that the allegations of limitation were not credible. *Plaintiff's Brief* at 21-23. He takes issue with the rejection of the report by his longtime friend stating Plaintiff was unable to care for his own personal needs, prepare meals, or sit, stand, or walk for meaningful periods. *Id.* (*citing* Tr. 261-266).

SSR 06–3p directs that the ALJ must consider evidence from "other, " non-medical sources such as family members or friends whose observations may be helpful in developing an assessment of a claimant's limitations. 2006 WL 2329939, *6 (2006); 20 C.F.R. § 404.1513(d)(4). In weighing such evidence, it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-3p at *6.

In September, 2016, Gerald Weiss, identifying himself as Plaintiff's friend, provided an assessment of Plaintiff's limitations, stating that Plaintiff was unable to sit, stand, or walk for significant periods due to pain (Tr. 261). Mr. Weiss stated that he talked to Plaintiff on a weekly basis (Tr. 261). He reported that Plaintiff's wife helped him dress and bathe (Tr. 262). He noted that Plaintiff was able to grocery shop with the use of a motorized cart but lacked the concentrational ability to handle his finances (Tr. 264). He noted that Plaintiff

experienced problems sitting, standing, walking and performing postural and manipulative activities (Tr. 266).

The ALJ stated that he "considered" Mr. Weiss' report of limitation but accorded it "no weight" on the sole basis that it was "not a medical opinion" (Tr. 24). The ALJ's rationale is unsatisfactory, given that form filled out by Mr. Weiss, entitled "Function Report - Third Party" required him to provide an assessment of Plaintiff's condition in his capacity as a long-term friend, not a medical expert. Nonetheless, the ALJ's rejection of Mr. Weiss' assessment does not provide grounds for remand. First, while SSR 06-3p mandates consideration of a layperson's report, nowhere does it require the ALJ to articulate his reasons for discounting the non-medical "other source" observations. In contrast to opinions by acceptable and non-acceptable medical sources, "SSR 06–3p does not identify . . . '[layperson] evidence' as an 'opinion' that requires an explanation of the weight given it." *Finkbeiner v. CSS*, 2015 WL 668058, *10 (E.D.Mich. February 17, 2015); SSR 06-3p at *4-6. Moreover, the ALJ was not obligated to accord weight to layperson testimony. "The fact that the ALJ is required to consider such third-party statements does not mandate that the ALJ adopt them . . ." *Shelton v. Colvin*, 2015 WL 5569024, *17 (W.D. Okla. Aug. 24, 2015); 06-3p at *6, *report and recommendation adopted*, 2015 WL 5579803 (W.D. Okla. Sept. 22, 2015).

Second, the ALJ's discussion of Mr. Weiss' layperson assessment directly follows Plaintiff's own *less* restrictive account of his limitations (Tr. 24). For example, Plaintiff's acknowledgment that he could drive stands directly at odds with Mr. Weiss' statement that Plaintiff was unable to drive (Tr. 264). Likewise, while Mr. Weiss stated that Plaintiff's household activities were limited to preparing two-minute microwave meals (Tr. 263-264), Plaintiff admitted that he was also able to fold laundry and vacuum (Tr. 24). Mr. Weiss' claim that Plaintiff went "nowhere," stands at odds with Plaintiff's report that he attended church and visited his children's school (Tr. 24, 264). Although the ALJ's rationale for rejecting Mr. Weiss' report was less than satisfactory, it cannot be said that he misconstrued the content of the report or failed to "consider" the report as required by SSR 06-3p. Further, because the record as a whole generously supports the finding that Plaintiff was capable of the limited range of sedentary work set forth in the RFC, a remand for the purpose of better explaining the reasons for rejecting Mr. Weiss' report is unlikely to change the non-disability determination. Accordingly, the Court declines to remand the case to the administrative level on this basis.

### C. The Hypothetical Question to the VE

For identical reasons to those set forth in Section A., Plaintiff's argument that the VE's job findings were based on an incomplete set of hypothetical restrictions does not provide a basis for remand. *Plaintiff's Brief* at 23-24. It is well settled that vocational testimony given in response to a question that does include all of a claimant's relevant

limitations does not constitute substantial evidence. *Varley v. Commissioner of HHS*, 820 F.2d 777, 779 (6th Cir. 1987); *Teverbaugh v. CSS*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003) (Roberts, J)(reversible error for ALJ to rely upon unsupported job findings in making a Step Five determination).

However, Plaintiff does not point to any specific deficiency in the copious hypothetical restrictions posed to the VE, but reiterates that the RFC in the administrative opinion (including the same restrictions as in the hypothetical question to the VE) does not account for his full degree of limitation (Tr. 23, 71-72). As discussed above, the ALJ permissibly drew the limitations set forth in the RFC from the medical source evidence and imaging studies. The ALJ's discussion and conclusions regarding the medical evidence, imaging studies, and Plaintiff's testimony reflects my own review of the record. Having adequately explained his reasons for discounting Plaintiff's more extreme but unsupported allegations of limitation, the ALJ was not required to include them in either the hypothetical question or ultimate RFC. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(ALJ not obliged to credit rejected claims in question to VE).

Although Plaintiff has shown some degree of limitation stemming from his 2009 workplace injury, the ALJ's determination that he was capable of a limited range of unskilled sedentary work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment [Dock. #28] is GRANTED and Plaintiff's motion for summary judgment [Dock. #23] is DENIED.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE
Dated: September 25, 2017

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 25, 2017, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen